Georgia SOTIRIADES, Appellant,

v.

David MATHEWS, Secretary of Health, Education and Welfare.

No. 74–2075.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 10, 1975.

Decided Nov. 18, 1976.

---

**7.** It is not necessary here to discuss the applicability of (3)(B).

Mark Sandstrom, Washington, D. C., for appellant; Fred Gipson, Washington, D. C., on the brief.

Mary-Elizabeth Medaglia, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Thomas G. Corcoran, Asst. U. S. Attys., Washington, D. C., on the brief, for appellee.

Before McGOWAN, TAMM and ROBB, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROBB.

ROBB, Circuit Judge:

Plaintiff Georgia Sotiriades appeals from an order of the District Court granting summary judgment to the Secretary of Health, Education and Welfare. Mrs. Sotiriades had filed suit under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). She sought review of an order by which the Secretary reduced her benefits under the Act, on the ground that she had fraudulently misrepresented her age and as a result had been paid social security benefits to which she was not entitled. For reasons set forth below, we believe that the District Court erred in granting summary judgment against her. Accordingly we reverse.

On April 19, 1954 the plaintiff, a native of Greece, then residing in the United States, filed an application for retirement insurance benefits under section 202(a) of the Social Security Act, 42 U.S.C. § 402(a). As then in effect that Act entitled to retirement benefits every fully insured individual who had attained age 65 and who filed an application for old age insurance benefits. Starting in November 1956, reduced retirement insurance benefits were payable to a wage earner who had reached the age of 62 and was fully insured.

On her application for retirement insurance benefits the plaintiff stated that she had been born in Greece on February 15, 1888, making her 66 years old; and she submitted a Greek birth certificate as evidence of that date of birth. The certificate, issued March 6, 1954 by the President of the Militiny Community, Province of Laceademonia, Prefecture of Lakonia, Kingdom of Greece, certified that the plaintiff, "a resident of the United States of America was born at the Militiny village in Zelina. Her birth appears recorded at the Dimotologion (Register of Citizens) Serial 17 for year of birth 1888 (one thousand eight hundred eighty eight)." On the basis of this evidence of an 1888 date of birth (DOB) the plaintiff was granted retirement insurance benefits effective in December 1953.

In 1971, seventeen years after the initial determination that the plaintiff was entitled to benefits, the defendant Secretary reopened the case, held that the initial determination of eligibility had been procured by "fraud or similar fault", that the plaintiff's correct date of birth was 1893, and that her retirement benefits must be "modified" accordingly. The Secretary held further that because payment of benefits to the plaintiff on the basis of the 1888 birthdate had caused an overpayment to her which could not be waived, the plaintiff's benefits must be reduced until the overpayment was recovered. *See* 42 U.S.C.

§ 404(a)(1); 20 C.F.R. § 404.507. This suit followed.

■ Whether the case should have been reopened by the Secretary is a question governed by the regulations of the Social Security Administration, 20 C.F.R. § 404.-957. Under these regulations an initial determination may not be reopened more than four years after its date unless it "was procured by fraud or similar fault of the claimant or some other person." 20 C.F.R. § 404.957(c)(1). To justify the reopening of the plaintiff's case therefore the Secretary was required to find in the record substantial evidence that in presenting and relying upon her official Greek birth certificate the plaintiff was guilty of fraud or similar fault. As defined by the Administration (J.A. 31, 81):

> Fraud exists when a person makes or causes to be made a false statement or a misrepresentation of a material fact for use in determining rights to social security benefits. Similar fault exists when a person makes an incorrect or incomplete statement knowingly or material information is concealed knowingly. However, fraudulent intent is not required.

We turn to the evidence developed in the administrative proceedings.

The record discloses that in 1970, when the plaintiff left the United States to become a permanent resident of Greece, the responsibility for maintaining the file relating to her retirement insurance benefits passed to the Social Security Administration's Division of International Operations. That office requested a verification of the Dimotologion upon which the plaintiff's birth certificate was based and an agent went to Militiny to examine the Dimotologion. The agent found no record of the plaintiff's birth in the Dimotologion. Serial No. 17 of the Dimotologion referred to a family other than the plaintiff's, and the pages referring to serial numbers 1 through 12 were missing. However the plaintiff's name and an 1888 date of birth were found at serial number 20 of a newer Dimotologion compiled as of June 20, 1955. This newer edition, according to the Secretary of

Militiny, was compiled on the basis of a register of males maintained for the purposes of military conscription together with information obtained orally.

Investigating further the agent interviewed the plaintiff at her Athens home. In this interview, which took place June 9, 1971, she estimated her age to be 78 years, making her estimated year of birth 1893, although she was unable to recall the year of her birth. She said she emigrated to the United States in 1921 when she was 27 years old (DOB 1894) and was married here in 1929. She had two Greek passports, one obtained in 1939 and the other in 1970. Both gave her date of birth as 1893. Asked about her age in comparison with the ages of her two brothers she replied that her brother George was two or three years younger than she and her brother Apostolos was older but she was not certain how much older. The 1955 Dimotologion which reflected an 1888 date of birth for plaintiff showed that Apostolos was born in 1886 and George in 1895.

The records of the City Clerk of Brooklyn, New York, where the plaintiff was married November 17, 1929, showed that her age on that date was 33, which would have made her date of birth 1896. The record also discloses that when the plaintiff applied for a social security number in 1946 she stated that her age was 53 and that she had been born in 1893. The records of the Immigration and Naturalization Service reflected that when the plaintiff was admitted to the United States on September 1, 1921 she gave her age as 27. (DOB 1894)

After considering the evidence the Chief of the Social Security Administration's Reconsideration Branch determined that at the time she applied for benefits the plaintiff knowingly withheld information concerning her date of birth, thereby committing "fraud or similar fault" within the meaning of 20 C.F.R. § 404.957(c)(1). He therefore concluded that the Administration's 1954 award of retirement insurance benefits should be reopened and reconsidered. He further found on the evidence that the plaintiff was born February 15,

1894. The plaintiff then requested a hearing before a hearing examiner of the Social Security Administration's Bureau of Hearings and Appeals. After the hearing, at which the plaintiff was represented by counsel, the examiner affirmed the reconsideration decision. On appeal to the Appeals Council of the Social Security Administration the reconsideration determination and the hearing examiner's report were affirmed.

After this action was filed in the District Court it was remanded to the Social Security Administration upon the plaintiff's motion for further administrative action. In the proceedings on remand the Appeals Council concluded that the plaintiff's true birthdate was February 15, 1893, and not 1894 as previously determined. The Appeals Council also declined to find evidence of fraud but held that the plaintiff had committed "similar fault" when she used the 1954 birth certificate to obtain social security benefits. The Council thought that when she applied for benefits she had substantial reason to believe the date on her birth certificate was erroneous and she should have informed the Social Security Administration of this "probable error".

In reaching its conclusion that the plaintiff's date of birth was February 15, 1893 the Appeals Council, as does the Secretary on this appeal, relied heavily on the alleged requirement of Greek law that to obtain a Greek passport in 1939 the plaintiff was required to submit a certificate from the mayor or president of her community containing proof of her age. The Appeals Council therefore concluded that the plaintiff's 1939 Greek passport, reflecting an 1893 date of birth, was the oldest document containing the most reliable proof.

The critical issue before us is whether there is substantial evidence in the record to support the Secretary's conclusion that when she submitted her Greek birth certificate in 1954 the plaintiff was guilty of fraud or similar fault. Specifically, is there substantial evidence that the plaintiff was obliged to tell the Social Security Administration that her official birth certificate

was probably in error? In our opinion there was no such evidence, and it follows that under the regulations the initial determination of the plaintiff's eligibility for benefits should not have been reopened.

The Administration's regulations provide at 20 C.F.R. § 404.703(c):

> Generally, the highest probative value will be accorded to a public record of birth . . ..

The government concedes that the 1954 birth certificate was genuine and there is no evidence or suggestion that the plaintiff or any one acting for her was guilty of fraud or impropriety in its procurement. The Secretary must therefore assume a heavy burden in demonstrating that the plaintiff should have rejected or questioned an official birth certificate for which she had no responsibility.

To demonstrate that the plaintiff knew or should have known her birth certificate was in error the Secretary relies upon various statements made by her over the years. We are referred to the plaintiff's statement when she was married in 1929 that her date of birth was 1896, and her statement to the Immigration Service in 1921 that her birthdate was 1894. The Secretary also points to her two Greek passports giving her date of birth as 1893. Finally, we have the interview with the plaintiff on June 9, 1971 when she "estimated" her age to be 78, making her "estimated" year of birth 1893, although she did not recall the year of her birth.

It is a matter of common knowledge, confirmed by experience, that a woman's undocumented statement of her age is subject to discount, particularly when it makes her younger than she is. Dr. Samuel Johnson once observed: "In lapidary inscriptions a man is not upon oath", Boswell, Life of Johnson (1775), and we think the same principle applies when a lady is asked about her age. As Will Rogers once said: "It is sad to see a beautiful young woman and realize that in twenty years she will be five years older." Viewing the evidence in this light we think the Secretary erred in holding that the plaintiff's oral and undocu-

mented statements about her age were substantial evidence not only undercutting her official birth certificate but also demonstrating that she knew or should have known that the certificate was false. We are supported in this conclusion by the Secretary's treatment of the plaintiff's statement on her application for a social security card in 1946. On that application she gave her year of birth as 1893. In his brief (P. 3) the Secretary tells us:

> The Social Security Administration, however, placed no appreciable reliance on the date shown on this application when it initially awarded benefits to appellant in 1954, because such applications are accompanied by no documentary evidence of birth and traditionally are given little weight by the Administration.

Apparently recognizing the weakness of a position based on undocumented statements by the plaintiff the Secretary argues that under Greek law the plaintiff's 1939 passport, showing her date of birth as 1893, must have been supported by an official record of birth. The Secretary concludes that "[t]he conflict between the year of birth in the 1939 passport and the 1954 birth certificate thus constitutes a conflict in official records." (Brief of Appellee at 16) The argument fails for in 1939 a female applicant for a passport was not required to submit a birth certificate. Certificates were required from males but not from females. *See* Greek Presidential Decree, March 8, 1931, Article 1. (J.A. 99)

The judgment is reversed with directions to grant the plaintiff's motion for summary judgment.

*So ordered.*