Jack LANGLEY, Plaintiff,

v.

Otis R. BOWEN, Secretary of the Department of Health and Human Services, Defendant.

No. 84–0616–CV–W–5.

United States District Court, W.D. Missouri, W.D.

Dec. 17, 1986.

182

Michael A. Knepper, Kansas City, Mo., for plaintiff.

Judith M. Strong, Asst. U.S. Atty., Paul P. Cacioppo, Regional Atty., Dept. of HHS, Region VII, Kansas City, Mo., for defendant.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

Before this Court are plaintiff's motion for an order reversing the decision of the Secretary of Health and Human Services and defendant's motion for summary judgment. At the administrative level, the Secretary adopted the position taken by the Appeals Council which terminated disability benefits plaintiff had been receiving, having been previously deemed "disabled" under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Section 405(g) of the Act provides for judicial review of a "final decision" of the Secretary of Health and Human Services. For the following reasons, the Court concludes that the Secretary's decision to terminate plaintiff's disability benefits is supported by substantial evidence.

*Factual and Procedural Background*

The factual and medical evidence which initially gave rise to a determination that plaintiff was "disabled" is generally undisputed. On June 16, 1971, plaintiff received serious injuries while welding inside a large water discharge tube. Apparently, plaintiff fell 40 feet from an improperly secured ladder, which resulted in fractures of both ankles and a closed compression fracture of his T–12 vertebrae.

Plaintiff applied for Social Security disability benefits on April 16, 1973, and these benefits were granted on July 9, 1973, with an onset date of June 16, 1971, the date of the injury.

Based on the state agency's review, the Social Security Administration issued a notice of reconsideration on July 7, 1981, informing plaintiff that as of December, 1975, he was no longer considered disabled. On December 29, 1981, an Administrative Law Judge (ALJ) dismissed plaintiff's request for a hearing because of insufficient constitutional basis given in the reconsideration decision, and directed the Social Security Administration to issue a revised determination advising plaintiff of the reasons for reopening and revising the prior determination and of his right to appeal.

On April 27, 1983, the administration notified plaintiff that, based on the evidence in his file, it appeared that a determination would be made that he had the ability to engage in substantial gainful activity in

December, 1975. Plaintiff was given an opportunity to present any additional statement or evidence before a determination would be made. The matter was further reviewed and plaintiff was notified on June 3, 1983, that the determination that he had the ability to engage in substantial gainful activity remained unchanged.

On November 30, 1983, the ALJ dismissed plaintiff's request for a hearing dated August 11, 1983, finding that such request was untimely. The Appeals Council affirmed this decision on March 30, 1984.

On May 29, 1984, plaintiff filed an action in this Court. On December 11, 1984, the Court, having found that the denial of plaintiff's request for a hearing was in error, remanded the case to the Secretary for further administrative review. On February 22, 1986, following a hearing, the ALJ determined that plaintiff had been under a "disability" as defined in the Social Security Act since June 16, 1971. On May 24, 1986, the Appeals Council reviewed the entire record and declined to adopt the recommended decision, finding that plaintiff's disability ceased in December, 1975, because he had demonstrated an ability to engage in substantial gainful activity.

The decision to terminate plaintiff's benefits was based primarily on investigations by both the Social Security Administration and the Department of Labor regarding plaintiff's involvement in the operation of electronics stores from 1975 through 1979. These investigations revealed that on February 21, 1975, plaintiff's wife was granted a business license by the town of Dover, Tennessee to operate an electronics store called "Rite-Way Engineering," and that during the calendar year 1975, the business had total gross receipts of $35,102.52. The business was closed on February 27, 1976, and had earned gross receipts of $11,700.68 for 1976. In 1976, the business was moved to Woodlawn, Tennessee under the name of "Gemini C.B. Sales" where it operated for approximately one year.

The investigations further demonstrated that in April, 1977, plaintiff and a Mr. Jack Uffelman opened a new store in Clarks-ville, Tennessee, under the name of "Tu-Jack's Lafayette Electronics." This store was apparently operated as a partnership composed of plaintiff and his wife and Uffelman and his wife. Tu-Jack's business license was issued by Montgomery County, Tennessee on April 13, 1977, to Mary Frances Langley and Suzanne Uffelman. The licenses were renewed for the years beginning April 1, 1978 and April 1, 1979. From May, 1977 through March, 1978, the business had total gross receipts of $145,688.69 and from April, 1978 through March, 1979, had total gross receipts of $139,975.46.

The court records of Montgomery County, Tennessee indicate that on August 13, 1979, plaintiff petitioned the court to dissolve his partnership with Jack Uffelman and their wives, and to appoint a receiver to wind up the affairs of the partnership. In that petition, plaintiff alleged that the partnership operating as Tu-Jack's Lafayette Electronics consisted of himself, Jack Uffelman, and "possibly" Suzanne Uffelman and Mary Frances Langley. In an amended complaint filed April 8, 1981, plaintiff requested the court to order defendants to account for and pay plaintiff his proportionate share of the partnership as of the date of his notification to dissolve the partnership. In a letter dated October 7, 1980, plaintiff informed Jack Uffelman that he had no right to dispose of any stock or fixtures belonging to Lafayette Radio Company without his consent. In the answer filed by plaintiff's wife, she alleged that in the decree of divorce she was awarded one-half of whatever interest plaintiff had in Tu-Jack's Lafayette Electronics.

The Department of Labor also obtained during their investigation a business card for Rite-Way Engineering with plaintiff's name printed on it and a business card for Lafayette, the Electronic Shopping Center, with both plaintiff's and Jack Uffelman's names printed on it.

The fraud investigators for the Social Security Administration also obtained several statements from individuals with knowledge of plaintiff's involvement with

the businesses. On June 11, 1981, Jeffrey M. Byrd reported that he had worked for plaintiff on a part-time basis from 1975 to 1979. He stated that plaintiff was completely in charge of the running of the stores in Dover and Woodlawn, Tennessee. Mr. Byrd reported that plaintiff often used crutches or a cane when he first began working for plaintiff in 1975, but that plaintiff's condition improved over time so that by the time he went to Clarksville he only occasionally used a cane. He stated that plaintiff was in the store six days a week, eight hours a day, and waited on customers, ordered new stock, and made all management decisions. Mr. Byrd further indicated that plaintiff continued this full-time activity after he went into business with Jack Uffelman at Tu-Jack's Lafayette Electronics. Mr. Byrd stated that his primary duties were repair and installation of electronics equipment at homes or businesses. Finally, Mr. Byrd indicated that during his employment, plaintiff's wife had no significant participation in the business.

William L. Smith, who worked at Tu-Jack's Lafayette Electronics from December, 1977 to November, 1980, told the SSA investigator that he was hired by plaintiff whom he knew as co-owner and co-manager. Mr. Smith reported that plaintiff performed the full range of activities required to operate a retail electronics business until August, 1979, when he disassociated himself from the business. He also indicated that he knew plaintiff when he operated the store in Woodlawn, Tennessee, and that during that time plaintiff apparently performed all activities necessary for operating the businesses. Mr. Smith also reported that he had helped plaintiff install an antenna on a 40–foot tower behind the shop in Woodlawn and that both he and plaintiff climbed the tower. He also stated that he saw plaintiff climb an 80–foot tower behind Tu-Jack's Lafayette Electronics.

Jack Uffelman also submitted information to the SSA investigator. He reported that when he and plaintiff opened Tu-Jack's in April, 1977, the business was listed in their wives' names for purposes of licenses and tax returns. He stated, however, that the Lafayette Electronics franchise was in his and plaintiff's names. Mr. Uffelman reported that plaintiff had told him that plaintiff wanted the business in his wife's name so that he would not lose his disability benefits. He stated that plaintiff worked eight hours a day, five days a week, and performed the full range of activity in a retail electronics business. Mr. Uffelman explained that each of them worked five days a week. He also reported that plaintiff's quitting of the partnership had nothing to do with plaintiff's medical problems. He also indicated that he knew plaintiff when he operated the store in Woodlawn and that, to the best of his knowledge, plaintiff worked six days a week. He also stated that plaintiff used his crutches for only a short period after an operation on his feet and that he used a walking cane only on an occasional basis.

The SSA investigator also obtained a newspaper article in which plaintiff and Jack Uffelman were noted as being the co-owners of Tu-Jack's Lafayette Radio Electronics.

After SSA was notified of plaintiff's activities by the Department of Labor, plaintiff was sent a letter by the SSA Field Integrity Staff (FIS) requesting him to come to the Clarksville, Tennessee SSA Branch Office on June 10, 1981. When plaintiff came to the office on June 10th, a claims representative attempted to conduct a continuing disability interview. The FIS investigator, Mr. Farr, was also present. Plaintiff denied that he was ever self-employed, but refused to sign a work activity report.

Based on the information obtained during the investigations by the SSA and the Department of Labor, plaintiff was charged with knowingly and willfully defrauding the United States Government in receiving Social Security benefits and workers' compensation benefits. On April 20, 1982, plaintiff entered a plea of *nolo contendere.* On May 29, 1982, the U.S. District Court for the Middle District of Tennessee found plaintiff guilty of the

above charges and he was placed on four years probation. Plaintiff was also sentenced to 10 days in jail for making false and fraudulent statements to Department of Labor officials.

At the hearing held before the ALJ on January 14, 1986, plaintiff testified that he had not worked on a regular basis since 1973. Upon further questioning, plaintiff stated that he was never employed in the electronics stores on either a full-time or part-time basis and had never had anything to do with management of the stores. He alleged that he did not receive any of the profits from the stores and never owned any part of the stores. Plaintiff explained that when he and his wife were divorced, he was awarded a share of the business, but that when he went to court to divide the business, the court decided that he had no interest in it.

In finding that plaintiff was under an existing disability, the ALJ apparently placed a considerable amount of emphasis on the fact that medically plaintiff was deemed disabled in the first instance and that there was no medical evidence which demonstrated that plaintiff had improved medically. Additionally, the ALJ concluded that since the financial statements of the electronics stores was based on gross rather than net receipts, then there was little evidence to show what profits or earnings claimant derived from the operations.

The Appeals Council rejected the ALJ's assessment of the evidence and concluded that since the local tax records during the years in question showed that plaintiff's businesses generated considerable sales, then it was reasonable to assume, absent evidence to the contrary, that such sales resulted in "substantial" income to the plaintiff, as defined in 20 C.F.R. 404.-1575(C).

## DISCUSSION

The scope of judicial review of the Secretary's decision is very narrow; the Secretary's ruling is conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Alexander v. Weinberger*, 536 F.2d 779 (8th Cir.1976). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *McMillian v. Schweiker*, 697 F.2d 215, 221 (8th Cir.1983). This substantial evidence standard of review applies equally to termination of disability benefits. 42 U.S.C. § 423(f) (1986). Thus, the issue to be decided in this case is whether there is substantial evidence to support the determination by the Appeals Council that plaintiff had engaged in substantial gainful activity.

■ Preliminarily, it should be noted that a person can be denied benefits, or may have his or her benefits terminated, where the evidence shows that he or she has engaged in substantial gainful activity regardless of any actual disability of the claimant. *Burkhalter v. Schweiker*, 711 F.2d 841, 843 (8th Cir.1983); 42 U.S.C. § 423(e) (1986); 20 C.F.R. § 404.1594(b) (1983).

In reviewing termination of benefits, it was the view of the Eighth Circuit that there was a presumption that a claimant who had previously been deemed disabled remained disabled and that the Secretary had the initial burden to come forward with evidence to show some legitimate reason for termination. *Rush v. Secretary of Health and Human Services*, 738 F.2d 909, 915 (8th Cir.1984).

■ However, on September 19, 1984, Congress passed the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, 98 Stat. 1794 (1984), which, among other things, sets forth the standard for reviewing disability benefits terminations. This Act provides that the Secretary may terminate the benefits of persons who have previously been found disabled only if there is substantial evidence which demonstrates that the individual is now able to engage in substantial gainful activity. 42 U.S.C. § 423(f) (1986). The Act provides further that this determination is to be made "... on the basis of the weight

of the evidence and on a neutral basis without regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled." *Id.* Thus, it appears that the presumption of continuing disability has been eliminated by Congress, thereby placing a continuing burden on the claimant to show either that he remains disabled, or that he has not or is not engaging in substantial gainful employment activity. *See Polaski v. Heckler,* 751 F.2d 943, 946 (8th Cir.1984).

Pursuant to explicit Congressional directions, the Social Security Administration has promulgated regulations for determining what constitutes substantial gainful activity where one is self-employed. In 20 C.F.R. § 404.1575 (Evaluation guides if you are self-employed), it provides that the Social Security Administration "... will consider your activities and their value to your business to decide whether you have engaged in substantial gainful activity if you are self-employed. We will not consider your income alone since the amount of income you actually receive may depend upon a number of different factors like capital investment, profit sharing agreements, etc.... We will evaluate your work activity on the value to the business of your services *regardless of whether you receive an immediate income for your services.*" (emphasis added)

This regulation goes further and lists three situations where one will be presumed to have engaged in substantial gainful activity:

... if—

"(1) Your work activity in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibility, is comparable to that of unimpaired individuals in your community who are in the same or similar business as their means of livelihood;

(2) Your work activity, although not comparable to that of unimpaired individuals, is *clearly worth* the amount in § 404.1574(b)(2) when considered in

terms of its value to the business, or when compared to salary that an owner would pay to an employee to do the work you are doing; or

(3) You render services that are significant to the operation of the business and receive a substantial income from the business." (emphasis added). 20 C.F.R. § 404.1575.

In determining whether plaintiff was engaged in substantial gainful employment, the ALJ and the Appeals Council relied on § 404.1575(3) which requires services that are significant to the operation of the business and receipt of a substantial income therefrom. While the evidence in the record clearly showed that plaintiff's services to the electronics stores was significant, the ALJ and the Appeals Council apparently differed on whether plaintiff had received any substantial income from the operation.

■■■■ It is the view of this Court that the ALJ erred first by placing considerable weight on the fact that plaintiff had been shown to be physically disabled since such inquiry is irrelevant where it is shown that a claimant has engaged in substantial gainful activity. The ALJ also erred by requiring that the Secretary show precisely what profits and earnings plaintiff derived out of the operation of the electronics stores. The regulations clearly provide that the amount of income alone, at least as far as self-employed individuals are concerned, is not determinative on the issue of whether one engages in substantial gainful activity since other factors like "supervisory, managerial, advisory or other significant personal services that [one] perform[s] as a self-employed individual may show that [one is] able to do substantial gainful activity." 20 C.F.R. § 404.1573(d). And while in this case plaintiff would have been presumed to have engaged in substantial gainful activity if plaintiff's earnings averaged more than $200.00 a month, the mere fact that the Secretary could only produce evidence of the gross earnings of the businesses should not preclude a finding that plaintiff had engaged in substantial gainful activity.

On the contrary, if, as indicated by the investigations by the SSA and Department of Labor, plaintiff had engaged in full-time managerial and supervisory functions in these businesses which spanned over a four-year period and in which gross sales for one operation was over $145,000 for one year, then such evidence could support the conclusion of the Appeals Council that this activity constituted both "substantial" and "gainful" employment activity.

Thus, the Court concludes that the determination by the Appeals Council that plaintiff had engaged in substantial gainful activity during the relevant periods is supported by substantial evidence and that the SSA acted properly in terminating plaintiff's disability benefits.

Accordingly, it is hereby

ORDERED that plaintiff's motion for an order reversing the decision of the Secretary is denied and that defendant's motion for summary judgment is granted. Each party is to bear its own costs.