**Dominick M. BARONE, Appellant,**

v.

**Otis R. BOWEN, M.D., Secretary of the Department of Health and Human Services, Appellee.**

**No. 505, Docket 88–6181.**

United States Court of Appeals, Second Circuit.

Argued Dec. 5, 1988.

Decided Feb. 15, 1989.

John M. Bigler, Robert, Huber, Lerner & Bigler, Rockville Centre, N.Y., for appellant.

Yvette Rivera, Asst. U.S. Atty. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., Robert L. Begleiter, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for appellee.

Before OAKES, KEARSE, and CARDAMONE, Circuit Judges.

OAKES, Circuit Judge:

The issue in this case is whether the Secretary of Health and Human Services properly reopened a determination of disability. Dominick Barone began receiving disability insurance benefits in 1980 for a disability that began in 1978. In 1985, the Secretary reopened Barone's disability determination and changed the onset of disability to 1980. This meant, of course, that Barone had been overpaid in the interim. Barone was not "without fault" in causing the overpayment and would therefore be obliged to refund the excess benefits if his case has been properly reopened by the Secretary. However, we conclude that there was not substantial evidence of "fraud or similar fault" to justify reopening the determination of Barone's disability. Therefore, we reverse the judgment of

the United States District Court for the Eastern District of New York, Eugene H. Nickerson, Judge, upholding the Secretary.

## I. *Background*

Dominick Barone is sixty-one years old. He has worked as a cabinet maker most of his adult life. He received disability benefits for several years following the amputation of his left big toe in the mid–1960s. In January 1979 it became necessary to amputate his right big toe. Then, on October 19, 1979, Barone applied to the Social Security Administration (SSA) for disability benefits. He stated on his application form that the amputation of his right big toe was the impairment that prevented him from working. The application form requested information about recent employment and earnings. In response, Barone stated that he had worked for G.P. Cabinet Co. (a firm that also appears in our record as Furniture Intrigue, Inc.) from September 1978 to October 1979, and that his earnings in 1979 amounted at that time to "approx. [$]4000.00." Barone submitted a Work Activity Report and a Disability Report with his application. The information that he provided in those reports differed from that given on the application form. According to the Work Activity Report, he worked at G.P. Cabinet from February 5 to March 6, 1979, and from September 10 to October 18, 1979, and was paid $320 per week. On his Disability Report, Barone wrote: "I was out of work from 12/20/78 to 2/5/79. I was out of work from 3/6/79 to 9/10/79. I stopped work completely as of 10/19/79. When I did work, I sometimes worked only a few hours." Finally, it should be mentioned that the employer's records, obtained by the SSA in 1983, showed that Barone worked from February to May and from September to October 1979. The records also say that by October 1, 1979, Barone had earned $4,206—only $206 more than the estimate of earnings to date that he gave the SSA on October 19.

The SSA decided on March 18, 1980, that Barone became disabled on December 20, 1978, and that he was entitled to benefits from that date. Meanwhile, Barone continued to work after submitting his applica-

tion for disability benefits, but for a different employer, Custom Craft Designs Ltd. That firm reported to the SSA in 1983 that Barone worked for the firm from November 1979 to August 1980, earning a total of $7,400. According to Barone, he called the Social Security district office to tell them about his work for Custom Craft. He says that he then went to the office to "fill out some affidavits" about this work. There is no documentary evidence in the record to corroborate this testimony. A vocational report prepared in February 1980 by a Social Security employee after a telephone conversation with Barone did not mention Barone's work for Custom Craft.

In 1983, the SSA sought more information about Barone's employment after the onset of his disability. It obtained the reports from the employers mentioned above, and it requested further information from Barone. In response, Barone reported that he had worked for G.P. Cabinet Co. from February 1978 to June 1979, forty hours per week at $8.50 per hour, and for Custom Craft Designs from August 1979 to September 1980, forty hours per week at $8.00 per hour.

The information about Barone's work activity led the SSA in 1985 to revise its determination of his disability. It found the onset of disability to be September 1, 1980, rather than December 20, 1978, and consequently decided that he had been overpaid $9,172.30. Barone disputed this decision; represented by counsel, he obtained a hearing before an administrative law judge to consider his case de novo. The ALJ decided on January 29, 1986, that Barone had not been disabled from December 20, 1978, to August 31, 1980. He held that the initial determination of disability was properly reopened and revised "because of fraud or, as in this case, similar fault." The ALJ concluded that the SSA's recovery should not be waived because Barone was not "without fault" in causing the overpayment.

The Appeals Council rejected Barone's request to review the ALJ's decision. Barone sought judicial review of the SSA's action by filing an action against the Secre-

tary in the district court, pursuant to 42 U.S.C. § 405(g) (1982). Judge Nickerson granted the Secretary's motion to affirm on the administrative record, provided that the Secretary recalculate the amount claimed as an overpayment. Barone then filed this appeal.

## II. *Discussion*

The Secretary may reopen a decision "for any reason" within one year of the initial determination, 20 C.F.R. § 404.988(a) (1988), and for "good cause" within four years, *id.* at § 404.988(b). There is no time limit for reopening a decision if it was obtained by "fraud or similar fault." *Id.* at § 404.988(c)(1). It is this latter provision of the regulation that governs this case, since the Secretary reopened Barone's case in 1985, more than four years after the initial determination in 1980.

When a determination is reopened, the Secretary may decide that there has been an overpayment. The Secretary is authorized to recover overpayments. *See* 42 U.S.C. § 404(a) (1982); 20 C.F.R. § 404.502 (1988). However, the Secretary must waive recovery of any overpayment if the individual was "without fault" *and* recovery would defeat the purposes of the Social Security Act or be against equity and good conscience. 42 U.S.C. § 404(b); 20 C.F.R. § 404.506.

The use of the word "fault" in these two regulations invites confusion, for the word means different things in different contexts. "Fault" in the context of an overpayment waiver depends upon whether in-

correct payment to an individual resulted from:

(a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or

(b) Failure to furnish information which he knew or should have known to be material; or

(c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507. We have interpreted this rule liberally, making it relatively easy for the Secretary to recover an overpayment: "No showing of bad faith is required; rather, an honest mistake may be sufficient to constitute fault." *Center v. Schweiker,* 704 F.2d 678, 680 (2d Cir.1983). Here there is a concession that Barone was not without this good-faith sort of "fault."

The regulations governing the reopening of a determination are considerably stricter. Social Security Ruling 85–23 defines and explains "similar fault." [1] Where a preponderance of the evidence establishes that a recipient "knowingly did something wrong," there is "similar fault." "It differs from fraud in that fraudulent intent is not required." *Id.* The Ruling lists the criteria that are necessary to establish "similar fault." The first three are the most important for this case: There must be a *wide discrepancy* between the original data and the new data. The difference must be *material*—i.e., it will change the level of payments. The recipient must have *knowingly* concealed or neglected to

---

1. Social Security Ruling 85–23 applies to Supplemental Security Income (SSI) determinations under Title XVI of the Social Security Act, whereas Barone received disability insurance benefits under Title II. However, there is no reason to doubt that SSR 85–23 fits Title II cases perfectly well. All relevant portions of the regulations governing the reopening of SSI decisions are identical to those for reopening insurance benefit decisions. *Compare* 20 C.F.R. § 404.988 (insurance benefits) *with id.* at § 416.1488 (SSI benefits). There are some differences between the regulations: Reopening an SSI decision for good cause must occur within two years (rather than four years for insurance benefit decisions),

and there are grounds for reopening insurance benefit decisions at any time (in addition to "fraud or similar fault") that are not available with respect to SSI decisions. *Id.* But these differences are not relevant to cases which concern "similar fault." We therefore conclude that the definition of "similar fault" in SSR 85–23 is a proper guide to whether the Secretary properly reopened Barone's disability determination. We also note that the ALJ cited SSR 85–23 as analogous support for his decision that Barone obtained his initial determination of disability by "fraud or similar fault." In addition, the Secretary has directed our attention to SSR 85–23.

report the significant information.[2] Thus, the rules for reopening a determination are stricter than those concerning waiver of an overpayment.

There were contradictions and errors in the information that Barone provided to the SSA. He concedes that he was not without fault—i.e., that he made honest mistakes. Therefore, he cannot avoid repayment if his case was properly reopened. Barone's appeal focuses upon the decision to reopen the determination of disability.[3]

The district court decided that, "[b]ecause [Barone] was not without fault in connection with his overpayment, the Secretary properly reopened this matter and was not required to waive recovery." Slip op. at 6. By blurring the distinction between "without fault" (in the context of waiving an overpayment) and "similar fault" (as applied to reopening a determination), the district court was in error. This error does not, however, require a remand for reconsideration. "Our statutory mandate as an appellate court is the same as that of the district court.... Thus, our focus is not so much on the district court's ruling as it is on the administrative ruling." *Valente v. Secretary of Health and Human Services*, 733 F.2d 1037, 1041 (2d Cir. 1984) (citations omitted). The ALJ in this case distinguished between the different uses of "fault" and applied the correct legal standard. The issue for us, then, is whether there was substantial evidence of "similar fault" to justify reopening the determination of Barone's disability. In other words, was there substantial evidence showing that Barone "knowingly did something wrong"? *See* Social Security Ruling 85–23.

The ALJ concluded that Barone "knowingly concealed" information concerning his work activity from the SSA. The judge pointed to the inaccuracies and contradictions in Barone's work activity reports and in his testimony at the hearing. Barone understated the length of his employment and gave conflicting explanations for leaving particular jobs. These errors led the ALJ to reject Barone's testimony about informing the SSA of his continued work after applying for disability benefits.

There is no dispute in this case that Barone gave inaccurate information to the SSA. We do not think, however, that substantial evidence establishes that he "knowingly did something wrong." The discrepancies between his Work Activity and Disability Reports of October 19, 1979, and his actual work in 1979 are less significant when one considers the information that he simultaneously provided in his application. There, Barone informed the SSA that he had worked for G.P. Cabinet Co. from September 1978 to October 1979. This actually *overstated* his employment at that firm. Barone also provided a reasonably accurate estimate of his earnings to that point in 1979: He reported $4,000 ("approx.") as of October 19, 1979, whereas actual earnings reported by his employer were $4,206 as of October 1. An accurate report of Barone's income was important because the SSA uses earnings as an indication whether a person is disabled. *See* 20 C.F.R. § 404.1571; *see also* the Notice of Reconsideration information Barone that, "when a person's earnings average more than $300 per month[,] he is generally considered to be performing substantial gainful work." The errors in Barone's Work Activity and Disability Reports were

---

2. The complete set of "similar fault" criteria provided by Social Security Ruling 85–23 is as follows:

    a. The changed event is *material* (i.e., will change the SSI payments) and will create a new overpayment or enlarge an existing overpayment;

    b. A *wide discrepancy* exists between the new data and the data reported;

    c. The SSI recipient (or other person) knowingly completed an incorrect or incomplete report, knowingly concealed events or

changes, or knowingly neglected to report events or changes that affect payments;

    d. The event (income, resource, etc.) can and will be *verified;*

    e. The event (income, resource, etc.) is *clearly attributable* to the SSI recipient (or the ineligible spouse, parent or sponsor of an alien in deeming situations); and

    f. The case does not involve intent to defraud.

3. Barone also challenges the amount claimed by the Secretary, but that issue is not before us.

not so important—i.e., *material*—because he provided the essential information on his application.

Thus, Barone did *not* conceal or neglect to report his work at G.P. Cabinet Co. or the income he received. Indeed, some of his misstatements actually went against his own interest: Barone overstated the time he worked for G.P. Cabinet Co. in 1979 on his application for benefits. Again in 1983 he listed almost continuous employment in a Work Activity Report for 1979, when in fact there were four months in 1979 when he did not work. We therefore believe that the ALJ should have given greater credence to Barone's testimony that he kept the SSA informed of his work after October 1979. It is significant, too, that Barone gave a reasonable and plausible explanation for continuing to work while receiving benefits: Testifying before the ALJ in 1985, Barone considered himself "limited," not disabled; for him, it would be a "cop-out" simply to accept his disability; he wanted to struggle against it and to get off Social Security. Barone's vocational rehabilitation counselor also confirmed that he refused to accept his limitations and kept insisting that he could work, according to a 1983 report. Whether or not this indicated "personality problems," as his counselor thought, it is probative evidence that Barone was not knowingly doing something wrong when he worked.

In conclusion, there is enough evidence in the record to show that Barone received greater disability benefits than he was entitled to receive for the period 1979–1980. He was not "without fault" in causing this overpayment. Barone would be obliged, then, to refund the overpayment if his disability determination were properly reopened. However, the scienter requirement in the rules defining "similar fault" was not satisfied by the evidence adduced before the ALJ. Accordingly, there was not substantial evidence of "fraud or similar fault" to justify reopening this matter. The Secretary was not entitled to reopen this determination and so cannot recover the overpayment.

JUDGMENT REVERSED.

KEARSE, Circuit Judge, dissenting:

I respectfully dissent. While I agree with the majority that the district court applied the wrong test and that this Court need not remand but may determine here whether the Secretary's ruling should be upheld, I disagree with the majority's conclusion that the record lacks sufficient evidence to support the Secretary's finding that the claimant's misrepresentation in his application for disability benefits, though not fraudulent, was knowing and material.

A claimant is disabled within the meaning of the Social Security Act if he is unable to engage in substantial gainful activity because of a physical impairment that has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A) (1976 & 1982). The question before the Social Security Administration ("SSA") in 1979 was thus whether, beginning in December 1978, Barone had been or would be unable to work for at least 12 consecutive months because he was impaired.

In his October 19, 1979 application, Barone did not just understate his earnings by $206. He also misinformed the SSA as to the length of his recent employment and as to the reasons he left certain jobs. As to Barone's employment during the prior 10 months, the disability report part of his application stated, "I was out of work from 12/20/78 to 2/5/79. I was out of work from 3/6/79 to 9/10/79." Consistent with these dates, Barone checked a box on the work activity report that represented that he had "worked 3 months or less and stopped because of [his] injury or illness." On the same report, Barone stated that the reason his working ended on "3/6/79" was that he "had an infection in [his] right foot and was unable to work."

In assessing the duration of Barone's impairment and its effect on his ability to work, and SSA claims reviewer in October 1979 found as follows:

The wage earner stopped work on 12/20/78. He returned to work from 2/5/79 to 3/6/79 and again from 9/10/79 to 10/18/79. Since both periods of work

lasted 6 weeks or less and he had to stop work both times because of his medical problems, this is considered an unsuccessful work attempt.

In fact, however, Barone had worked in 1979 from February through May and from September onward. Thus, instead of being able to work less than three of the first 10 months of 1979, as his disability report stated, Barone had in fact worked approximately six of those months.

In the 1986 proceedings, the Secretary found, in light of Barone's actual work history, (1) that Barone had not been disabled within the meaning of the Act as of December 1978, (2) that his improper receipt of benefits commencing with that date was attributable to his fault, and (3) that though not fraud, his fault was similar to fraud. We are required to uphold the decision of the Secretary if it is supported by "substantial evidence" in the record as a whole. 42 U.S.C. § 405(g) (1982). "Substantial evidence" means " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). It is not within our province to reverse the Secretary's finding simply because we might have chosen to give greater credence to testimony of the claimant that was not credited by the Secretary.

In light of the undisputed facts that Barone's application contained misrepresentations as to the amount of money he earned, the length of time he worked, and his reasons for leaving particular jobs, I believe the Secretary's finding that Barone's misrepresentations were material and not unknowing, and hence were similar to fraud, is supported by significantly more than a scintilla of evidence.