**Perry BRITTON, Appellant,**

v.

**Louis W. SULLIVAN, Secretary of Department of Health and Human Services, Appellee.**

No. 89–1920.

United States Court of Appeals, Eighth Circuit.

Submitted March 12, 1990.

Decided July 11, 1990.

Phoebe Powell, Macon, Mo., for appellant.

Eric T. Tolen, St. Louis, Mo., for appellee.

Before JOHN R. GIBSON and MAGILL, Circuit Judges, and DUMBAULD,* Senior District Judge.

JOHN R. GIBSON, Circuit Judge.

Perry Britton appeals from an order of the district court,[1] adopting the Magistrate's[2] Review and Recommendation, which granted summary judgment in favor of the Secretary of Health and Human Services, and determined that Britton should not have been paid disability benefits following the determination of his disability in 1978. The Secretary found that Britton had applied for benefits with fraudulent intent and had resumed substantial gainful activity within one year of the al-

leged onset of his disability. On appeal, Britton argues that the district court erred by adopting the magistrate's recommendation because neither the determination that Britton applied for benefits with fraudulent intent nor the determination that he performed substantial gainful activity within one year of the onset of his alleged disability was supported by substantial evidence. We affirm the order of the district court.

In 1972, Britton began operating a wrecker and taxi service in Macon, Missouri. In July 1978, Britton applied for disability benefits after he sustained injuries from several vehicle accidents. The Social Security Administration awarded him disability benefits, with an onset date of March 15, 1978, based upon a diagnosis of severe degenerative arthritis of the cervical, dorsal, and lumbar spine. The Social Security Administration informed Britton in May 1985, however, that he was not entitled to those benefits because it appeared that he had resumed substantial gainful activity within one year of the onset date of his alleged disability based upon his involvement with Independent Cab Co. The Social Security Administration asserted that Britton continued to own and operate the taxi service following his award of benefits. Britton disputed this, but the Social Security Administration determined that he had been paid $24,504.30 in disability benefits which he was not entitled to receive. Britton was ordered to repay this sum. An administrative law judge (ALJ) then held a hearing and affirmed the Social Security Administration's determination. The Appeals Council of the Social Security Administration denied Britton's request for review, which made the ALJ's decision the final decision of the Secretary. 42 U.S.C. § 405(g) (1982). Britton then sought review in district court. A magistrate reviewed the record in detail and recommended affirmance of the ALJ's decision. The district court subsequently adopted the Magistrate's Review and Recommendation. This appeal followed.

---

* The HONORABLE EDWARD DUMBAULD, Senior United States District Judge for the Western District of Pennsylvania, sitting by designation.

1. The Honorable Clyde S. Cahill, United States District Judge for the Eastern District of Missouri.

2. The Honorable Robert D. Kingsland, United States Magistrate for the Eastern District of Missouri.

### I.

Britton first argues that the Social Security Administration's determination that he had applied for benefits with fraudulent intent is not supported by substantial evidence.[3] Our scope of review of the Secretary's decision is extremely limited. We must affirm the decision if supported by substantial evidence. 42 U.S.C. § 405(g); *see also Fowler v. Bowen,* 876 F.2d 1451, 1455 (10th Cir.1989) (per curiam) (applying substantial evidence test to Secretary's determination of fraud or similar fault); *Barone v. Bowen,* 869 F.2d 49, 53 (2d Cir.1989) (same). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). The substantial evidence test is equally applicable to the termination of disability benefits. 42 U.S.C. § 423(f) (1982 & Supp. V 1987).

Britton was awarded benefits in 1978, and the Social Security Administration reopened his case in 1985. A federal regulation permits the Social Security Administration to reopen and revise disability decisions only if certain conditions are met. This federal regulation provides, in part, that:

> A *determination,* revised determination, decision, or revised decision *may be reopened—*
> (a) Within 12 months of the date of the notice of the initial determination, for any reason;
> (b) Within four years of the date of the notice of the initial determination if we find good cause, as defined in § 404.989, to reopen the case; or
> (c) *At any time if—*
> (1) *It was obtained by fraud or similar fault.* . . .

20 C.F.R. § 404.988 (1989) (emphasis added). Since Britton's initial disability determination occurred in 1978, it may be re-opened after 1982 only upon a finding that his benefits were "obtained by fraud or similar fault." Therefore, our initial inquiry is whether the Secretary's finding that Britton applied for benefits with fraudulent intent is supported by substantial evidence.

The Social Security guidelines define "fraud or similar fault" as follows:

1. FRAUD    Fraud exists when a person either:

   a. Makes or causes to be made with intent to defraud, a false statement or misrepresentation of a material fact for use in determining rights to Social Security benefits; or

   b. With intent to defraud, conceals or fails to disclose a material fact for use in determining rights to Social Security benefits.

2. SIMILAR FAULT    Similar fault exists when a person either:

   a. Knowingly makes an incorrect or incomplete statement that is material to the determination; or

   b. Knowingly conceals information that is material to the determination. However, fraudulent intent is not required.

SSA Program Operations Manual § GN 04020.010 (Appellant's Addendum at 40).

Britton places great emphasis upon the magistrate's framing of the issue: "whether the ALJ correctly determined that [Britton] engaged in substantial gainful activity?" According to Britton, the magistrate focused on the wrong issue and failed to discuss the threshold issue of whether Britton applied for benefits with fraudulent intent. Therefore, the Social Security Administration should not have been able to reopen his case after six years and address the substantial gainful activity issue. From our study of the record, however, we are satisfied that the ALJ[4] properly ad-

---

3. Britton vigorously argues that his case would not have been reopened but for the "monumental error" made by a Social Security Administration investigator. The investigator reported that Britton had earnings of approximately $13,000 over a seven month period, rather than a one year and seven month period from March 1983

to October 1984. We are satisfied that this error is not significant, however, since both the ALJ and the magistrate correctly stated that the earnings were received over the longer time period. (Appellant's Appendix at 39, 109).

4. We focus primarily on the ALJ's findings, rather than on the decision of the district court.

dressed this threshold issue and that his finding of fraudulent intent is supported by substantial evidence in the record as a whole.

The ALJ concluded that Britton applied for benefits in 1978 "with fraudulent intent in that he intended to continue operating his cab business and to maximize his income from the cab business after that date against what he knew to be the requirements of the Social Security Act that a person performing substantial gainful activity shall not be entitled to disability insurance benefits." The Social Security Administration's case was based upon witnesses' sworn statements, business records, and expert evidence, including handwriting analysis.

Terry Stanfield stated that he had worked for Britton in the cab business at the time that Britton applied for benefits. He stated that Britton wore his neck brace only when other people were around and, in Stanfield's opinion, Britton behaved as though the accident had not injured him. He further stated that Britton continued to do the same amount of driving and physical work after he was hospitalized in 1978 as he had before his injuries.

Ernest Lorton, who owned and operated his own cab, stated that Britton drove a cab after he was released from the hospital in 1978. Lorton's wife, Rose Mary Lorton, also stated that Britton drove his cab after his hospitalization. Lorton's mother, Corene Duckworth, stated that she had known Britton for over ten years and that she did not remember any time period, except for vacations, when Britton had not driven a cab for the Independent Cab Co. She stated that she regularly saw him driving around town during her rounds delivering the daily paper.

Alice Perkins stated that she used the Independent Cab Co. for transportation to and from work from 1970 until 1982. She stated that Britton always drove her in the cab, except when he was on vacation. Robert Perkins, stated that he also rode to work regularly in a cab driven by Britton, from about 1975 until 1984.

As the ALJ noted, all of the witnesses' stories are consistent. All of the witnesses indicated that Britton appeared to be in good health after the 1978 accident. The magistrate found these witnesses to be credible and noted that they had no incentive to harm Britton by their testimony; in fact, Britton had helped several in the past. The magistrate concluded that "their statements are credible evidence that [Britton] continued to operate his cab business after March 15, 1978." We are to "give great deference to the ALJ's determination of ... credibility." *Fowler*, 876 F.2d at 1455.

The magistrate also stated that Britton had produced no records or tax returns filed after 1978. The magistrate was left "with the distinct impression that [Britton] must be trying to hide something." He felt that Britton's credibility was seriously undermined by his numerous inconsistent statements. Britton testified that he did not report his post–March 1978 work or earnings because he did not believe that they were significant. On his application for benefits, however, Britton signed an acknowledgement that any employment must be reported to the Social Security Administration. This reporting requirement did not exempt earnings below a threshold level. Based upon these inconsistencies, the ALJ could reasonably find that Britton was not a credible witness. *See Conley v. Bowen*, 781 F.2d 143, 147 (8th Cir.1986) (per curiam).

■ We are persuaded that the above recital of evidence, pertaining specifically to Britton's activities at the time he applied for benefits, provides substantial support for the ALJ's finding of fraud. We are not persuaded, however, that we are limited to examining evidence of fraud only during

"Our statutory mandate as an appellate court is the same as that of the district court.... Thus, our focus is not so much on the district court's ruling as it is on the administrative ruling." *Valente v. Secretary of Health & Human Serv.,*

1978, as Britton claims.[5] We believe that evidence of Britton's activities occurring after 1978 is also relevant to this inquiry. We are focusing on Britton's intent in 1978; evidence of later activities, however, is relevant to discerning that intent.

■ There was substantial evidence that Britton attempted to conceal his ownership of Independent Cab following his benefits award. Britton attempts to refute this evidence by characterizing it as attempts to sell the business. As we have noted, the ALJ's credibility assessments are entitled to deference.

A clerk from the city license bureau stated that Britton put a son's name on some of the taxi licenses, despite his son being too young to hold a license in his own name. An employee of the City Clerk's office stated that Britton had identified other individuals as owning Independent Cab when applying for licenses, even though Britton always personally handled the matters and paid the fees.

Virginia Thompson, Britton's personal and social acquaintance, stated that Britton asked her to sign a paper indicating that she owned Independent Cab because he was going to court and feared that he would lose his Social Security benefits if his ownership of the company were revealed. She signed the statement, and she also endorsed a check payable to Independent Cab for $800, though she turned over the proceeds to Britton. She said that Britton listed her home address as the cab company's address without informing her. She learned of this when she saw the company's address listed in the telephone directory. Thompson later disclaimed ownership of the company in a notarized statement.

Ernest Lafferty, at one time a cab driver for Independent Cab, stated that Britton

asked him to claim ownership of the company also, but Lafferty declined. Britton made the same request of David Brakebill, and Brakebill agreed on the condition that Britton pay all taxes and insurance. Britton then gave Brakebill the city licenses listed with Brakebill's name. Brakebill endorsed checks payable to Independent Cab but turned the money over to Britton.

Walter Koch stated that his name was on the Independent Wrecker Company's bank account to secure a loan to Britton. Koch received four cancelled checks payable to Independent Cab allegedly endorsed by Koch. Koch denied endorsing the checks or authorizing anyone to do so on his behalf. A handwriting analyst expressed the opinion that the check endorsements bearing Walter Koch's name were made by Britton.

The record provides overwhelming support for the ALJ's conclusion that, at the time when Britton applied for disability benefits in 1978, he fraudulently intended to continue to operate his cab business and to maximize his income, despite his knowledge that a person performing substantial gainful activity was not entitled to disability benefits. We have no doubt that the Social Security Administration was authorized to reopen and review Britton's benefits award on the ground that he applied for such benefits with fraudulent intent.

## II.

■ Britton also argues that the finding that he performed substantial gainful activity within one year of the onset of his alleged disability is not supported by substantial evidence. We recognize initially that an individual may have his benefits terminated where the evidence reveals that he engaged in substantial gainful activity,

---

733 F.2d 1037, 1041 (2d Cir.1984), *aff'd in part, rev'd in part,* 897 F.2d 54 (2d Cir.1990).

**5.** The cases cited by Britton are not to the contrary. In *Sotiriades v. Mathews,* 546 F.2d 1018, 1021 (D.C.Cir.1976), the court focused upon the time period of the benefits application because the claimant's alleged fraud was failing to inform authorities of an error in her birth certificate. In *Hoffman v. Bowen,* 668 F.Supp. 1146,

1149 (N.D.Ill.1987), the court focused upon the time of the benefits application because the claimant's alleged fraud was failing to notify authorities that he had returned to work at the time he received notice of a benefits award. In contrast, the allegation of fraudulent intent in the case before us concerns a plan to continue working after the benefits award.

despite an earlier determination of disability. *Burkhalter v. Schweiker*, 711 F.2d 841, 843 (8th Cir.1983); 20 C.F.R. § 404.1520(b) (1989). Therefore, we concentrate upon Britton's activities rather than upon his physical condition.[6]

Federal regulation defines "substantial gainful activity" as work which involves significant and productive physical or mental duties, and is done or intended for pay or profit. 20 C.F.R. § 404.1510 (1989). Work may be substantial even if it is part-time or the individual does less or earns less than when working previously. 20 C.F.R. § 404.1572(a) (1989).[7]

We are satisfied that the ALJ's determination that Britton engaged in substantial gainful activity is supported by substantial evidence. The evidence previously discussed in the context of Britton's intent in applying for benefits is also relevant to the issue of his work activities. We will not repeat it here.

All of the witnesses stated that Britton drove Independent Cab's vehicles more than any other person, both before and after his March 1978 accident. All contracts, contract proposals, and applications on behalf of Independent Cab were signed by Britton. The telephone directory listed the same address for both Britton and Independent Cab.

Molly Holman, Community Development Director for the City of Macon, stated that Britton submitted a bid proposal in June 1982 to provide cab service for a senior citizens transportation coupon program. In his bid, Britton stated that he was an individual doing business as Independent Cab Co. Britton was awarded the job for the period of July 1982 to March 1983. Holman further stated that Britton was the only Independent Cab driver she saw picking up passengers at City Hall. There was evidence that Britton was paid $4690.13 by the City of Macon for the coupon program from August 1982 through March 1983. The coupon program was then transferred to the Macon Chamber of Commerce.

Veronica Wood, Executive Director of the Chamber of Commerce, stated that Britton listed his position on documents as manager of Independent Cab, while Ernest Lafferty was listed as owner. She had

---

6. Britton argues that the Social Security Administration failed to establish that he was not disabled after March 15, 1978. As we have just stated, such a determination is not necessary to resolve the issue of whether Britton engaged in substantial gainful activity.

Britton also argues that the decision that his disability benefits should be repaid was not before the court below. We do not believe that it is necessary for us to reach this issue because neither the ALJ nor the magistrate considered this issue.

7. For a self-employed individual such as Britton, the regulations provide that the Social Security Administration:

will consider your activities and their value to your business to decide whether you have engaged in substantial gainful activity if you are self-employed. We will not consider your income alone since the amount of income you actually receive may depend upon a number of different factors like capital investment, profit sharing agreements, etc.... We will evaluate your work activity on the value to the business of your services regardless of whether you receive an immediate income for your services. We will consider that you have engaged in substantial gainful activity if—

(1) Your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood;

(2) Your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) [$260 a month in calendar year 1978 and $280 a month in calendar year 1979] when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing; or

(3) You render services that are significant to the operation of the business and receive a substantial income from the business.

20 C.F.R. § 404.1575(a) (1989). "Significant services" are defined as follows:

If you are not a farm landlord and you operate a business entirely by yourself, any services that you render are significant to the business. If your business involves the services of more than one person, we will consider you to be rendering significant services if you contribute more than half the total time required for the management of the business, or you render management services for more than 45 hours a month regardless of the total management time required by the business.

20 C.F.R. § 404.1575(b)(1).

monthly contact with Britton when he turned in passenger transportation coupons for reimbursement. Britton received gross earnings of more than $13,000 from the Chamber of Commerce for his work in the coupon program for the time period of March 1983 through October 1984. Wood believed that Britton did most of the driving for the company.

Virginia Thompson stated that she was not aware of any drivers or operators for Independent Cab other than Britton. Ernest Lafferty stated that he observed Britton doing maintenance work on the vehicles, and that Britton drove most of the cab runs, except for the in-town runs which Lafferty drove. Terry Stanfield stated that Britton continued to drive and participate in running the cab business as of the date of his statement in April 1985.

Susan Gehringer, a dietitian at a Macon hospital, stated that Britton participated in a program to provide food service for the county jail. Britton picked up meals twice daily at the hospital and delivered them to the jail during the period of mid–1981 to early 1983.

Teresa Brown stated that she worked for Britton as a cab driver when he was on vacation in the summer of 1983 and that she was paid by Britton.

Based upon this evidence, as well as other evidence in the record, the ALJ concluded that: (1) Britton was the *de facto* owner of Independent Cab at all relevant times between March 15, 1978, and September 16, 1984; (2) Britton devoted well in excess of 45 hours per month to driving and management activities on behalf of the business during the relevant time period; (3) Britton's average net earnings were comparable during the relevant time period to his earnings before March 15, 1978; and (4) Britton performed significant services for substantial income as defined in 20 C.F.R. §§ 404.1574 and 404.1575.

Based upon the overwhelming evidence in the record, we are compelled to conclude that the ALJ correctly determined that Britton had engaged in substantial gainful activity within one year of the onset of his alleged disability.

■ Finally, we must reject Britton's argument that his earnings were insignificant because he had to deduct all expenses from gross earnings. In this case, as in *Langley v. Bowen*, 651 F.Supp. 181 (W.D. Mo.1986), "the mere fact that the Secretary could only produce evidence of the gross earnings of the businesses should not preclude a finding that plaintiff had engaged in substantial gainful activity." *Id.* at 186. "The regulations clearly provide that the amount of income alone, at least as far as self-employed individuals are concerned, is not determinative on the issue of whether one engages in substantial gainful activity...." *Id.*

### III.

We affirm the district court's order holding that Britton's Social Security disability insurance benefits case could be reopened and that Britton had engaged in substantial gainful activity such that he was not entitled to receive the disability benefits for the period in question.