**Marcia REED, Appellant,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health And Human Services, Appellee.**

**No. 91–3791.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1992.

Decided March 5, 1993.

Michael D. Mayes, D. Mayes and Bruce K. Kirby, Springfield, MO, on brief, for appellant.

Alleen S. Castellani, Jean Paul Bradshaw II and Jerry L. Short, Kansas City, MO, on brief, for appellee.

Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and HANSEN, Circuit Judge.

HANSEN, Circuit Judge.

Marcia Reed appeals the order of the

district court[1] granting summary judgment to the Secretary of Health and Human Services (Secretary). The district court found that substantial evidence on the record as a whole supported the Secretary's decision to deny her supplemental security income (SSI) benefits because of claimed disability. We affirm.

## I. BACKGROUND

Reed is a 5'2" 293–pound woman who suffers from morbid obesity, medically-controlled diabetes, and other claimed physical ailments. At the time of the administrative hearing, she was 29 years old. Although she has been previously employed as a nurse's assistant, counter helper, waitress, and chicken deboner, she has not worked regularly since 1982. She completed ten years of formal education. On September 21, 1987, at the age of twenty-seven, she was injured in an automobile accident. She was examined at a hospital and diagnosed as having a mild back strain. During the next several years, numerous doctors examined Reed regarding a variety of ailments.

Reed filed applications for SSI disability benefits in 1987 and again in 1988. The applications were denied and Reed never appealed the decisions. Reed then filed her third application for SSI disability benefits on January 10, 1990, claiming that she was disabled due to diabetes and obesity. The application was denied initially and again on reconsideration. Reed then requested an administrative hearing.

Following the hearing, the administrative law judge (ALJ) denied benefits on July 2, 1990, by concluding that Reed was not disabled. The ALJ found that although she was unable to perform her past relevant work, Reed was capable of making vocational adjustments and performing other jobs that exist in significant numbers in the national economy.

Reed then requested review by the Secretary's Appeals Council. On March 21, 1991, the Appeals Council denied the request for review and affirmed the Secretary's denial of disability benefits.

Reed sought judicial review of the Secretary's adverse decision. In response to the parties' cross motions for summary judgment on the administrative record, the district court granted summary judgment to the Secretary. Reed appeals this decision.

## II. DISCUSSION

Our review of the Secretary's decision to deny disability benefits is limited to determining whether the decision is supported by substantial evidence on the record as a whole. See 42 U.S.C. § 405(g); Groeper v. Sullivan, 932 F.2d 1234, 1237 (8th Cir. 1991). "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Britton v. Sullivan, 908 F.2d 328, 330 (8th Cir.1990).

Reed first argues that the ALJ did not properly consider her subjective complaints of pain as required by Polaski v. Heckler, 739 F.2d 1320 (8th Cir.1984). The ALJ found that her subjective complaints of pain were not credible. Reed contends, however, that there is not substantial evidence to support this finding by the ALJ.

When determining the credibility of a claimant's allegations of subjective pain, Polaski requires the ALJ to consider the claimant's prior work record, observations by third parties, and diagnoses by treating and examining physicians relating to such matters as (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions. 739 F.2d at 1322.

In the written hearing decision, the ALJ thoroughly described Reed's subjective complaints. Based on her testimony, Reed suffers from back pain, diabetes, excruciating bone spurs on her feet, and headaches lasting from one hour to seven hours occur-

---

1. The Honorable Russell G. Clark, Senior United States District Judge for the Western District of Missouri.

ring five to seven times a week, and is unable to walk more than one-half block, stand for more than 10 minutes, or sit for more than 45 minutes at a time. *See* ALJ decision at 2. In sharp contrast to her testimony, however, the ALJ observed that the objective medical evidence does not support Reed's subjective complaints of pain. Although aware that an ALJ cannot disregard a claimant's subjective complaints of pain solely because the objective medical evidence does not fully support them, the ALJ correctly stated that subjective complaints may be discounted if there are inconsistencies in the evidence as a whole. *See Polaski,* 739 F.2d at 1322.

After reviewing the record, we agree that the evidence as a whole is inconsistent. Reed has not regularly worked for ten years. She testified at the hearing that she cleans her house and cares for her children, albeit with help from her family members. Hearing Transcript (Tr.) at 61–62. She also does the family shopping and cooking, again, with help from her family. Tr. at 62. While the medical records reveal some complaint about migraine headaches, no evidence exists that she complained to physicians of debilitating headaches lasting from one hour to seven hours a day five times a week and of her inability to concentrate. Reed's treating physician testified that her diabetes is well controlled with oral medication. Tr. at 30. Conditions that can be reasonably regulated cannot constitute a basis of disability. *Brown v. Heckler,* 767 F.2d 451, 452 (8th Cir.1985); *see also* 20 C.F.R. § 404.1530(b) (1992). Physicians also advised her of the benefits of losing weight and even attempted to assist her in a weight loss program, but she nevertheless continued to gain weight. Although she complains of poor eyesight, no medical evidence exists that documents any significant vision impairment. Reed's complaint of back pain is unsubstantiated as well. X-rays of her lumbar and cervical spine were negative and physicians stated that she had full range of motion of her spine. Tr. at 224, 249. Reed also alleges that she suffers from carpal tunnel syndrome (CTS). Dr. Lin, who examined Reed in January 1990, however, ruled out CTS

and stated that he thought she needed vocational rehabilitation. Tr. at 278. Dr. Luzecky, who examined her in May 1990, recognized that her complaints suggested CTS but that the results of her nerve examination only indicated a possibility of borderline CTS. Tr. at 308–09.

 Because " 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence,' " *see Browning v. Sullivan,* 958 F.2d 817, 821 (8th Cir.1992) (quoting *Cruse v. Bowen,* 867 F.2d 1183, 1184 (8th Cir.1989)), we conclude that there was substantial evidence in the hearing record to support the ALJ's decision to disregard Reed's subjective complaints of pain. We will not disturb the decision of an ALJ who seriously considers, but for good reasons explicitly discredits, a claimant's testimony of disabling pain. *Browning,* 958 F.2d at 821 (citing *Dixon v. Sullivan,* 905 F.2d 237, 238 (8th Cir.1990)).

Reed next contends that the ALJ erred by failing to consider the combined effects of her impairments. She also argues that the ALJ failed to utilize vocational expert testimony in making the determination as to her disability status.

 In order to establish a disability claim, the initial burden of proof is on the claimant to show that she is unable to perform her past relevant work. *Sykes v. Bowen,* 854 F.2d 284, 286 (8th Cir.1988). If the claimant can meet her burden, the burden of proof shifts to the Secretary to prove that the claimant is capable of performing other jobs in the national economy that are consistent with her medically determinable impairments, age, education and work experience. *Id.* (citing *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc)). "At this stage, the ALJ must determine the claimant's residual functional capacity (RFC), that is, what [s]he can still do physically even with [her] impairments, and also the claimant's age, education, and relevant work experience— the latter three findings being referred to as vocational factors, as opposed to RFC,

which is a medical factor." *McCoy*, 683 F.2d at 1142. "If the ALJ's findings as to RFC, age, education, and work experience fit any of the combinations of those criteria contained in the Tables in Appendix 2 to Part 404, then the ALJ must reach the conclusion (either 'disabled' or 'not disabled') directed by the relevant Rule or line of the applicable Table." *Id.* The question Reed poses is whether the ALJ can rely exclusively on the guidelines in making this disability determination or whether the ALJ was required to also consider vocational expert testimony.

■ Generally, if the claimant suffers from nonexertional impairments that limit her ability to perform the full range of work described in one of the specific categories set forth in the guidelines, the ALJ is required to utilize testimony of a vocational expert. *Groeper v. Sullivan*, 932 F.2d 1234, 1235 n. 1 (8th Cir.1991). In those instances, the ALJ cannot rely exclusively on the guidelines to direct a conclusion of whether the claimant is "disabled" or "not disabled." *Thompson v. Bowen*, 850 F.2d 346, 349 (8th Cir.1988). Instead, testimony of a vocational expert must be taken. *Groeper*, 932 F.2d at 1235. The exception to this general rule is that the ALJ may exclusively rely on the guidelines even though there are nonexertional impairments if the ALJ finds, and the record supports the finding, that the nonexertional impairments do not *significantly* diminish the claimant's RFC to perform the full range of activities listed in the guidelines. *Thompson*, 850 F.2d at 349–350 (emphasis added) ("If Thompson's nonexertional impairments significantly affect her residual functional capacity then the Guidelines are not controlling and may not be used to direct a conclusion of disabled or not disabled."). In other words, the ALJ may rely on the guidelines to direct a conclusion of either disabled or not disabled without resorting to vocational expert testimony if the ALJ determines that a claimant's non-

exertional limitations do not significantly affect the claimant's RFC. *Id.* at 349.

■ In this case, Reed proved that she was unable to perform her past relevant work. *See* ALJ's decision at 5. The burden then shifted to the Secretary to prove that Reed could perform other jobs that exist in a significant number in the national economy.[2] In deciding whether Reed was disabled, the ALJ found that Reed's subjective assessment of the limitations of her functional capacity, including her pain, was not credible. As we previously stated, it is proper for the ALJ to make credibility determinations. *Thompson*, 850 F.2d at 349. The ALJ should state the reasons on the record for the credibility determinations. *Id.* In this case, the ALJ adequately stated his reasons. The ALJ specifically found that no credible nonexertional factors existed that would reduce Reed's RFC. *See* ALJ's decision at 5. Because the ALJ specifically found, and the record supports the finding, that the nonexertional impairments do not *significantly* diminish Reed's RFC to perform a full range of activities listed in the guidelines, the ALJ was correct to rely exclusively on the guidelines in order to determine Reed's disability status. *See Groeper*, 932 F.2d at 1235 n. 1 (citing *Thompson*, 850 F.2d at 349–50). Therefore, the testimony of a vocational expert was not required in this determination.

■ According to the guidelines, a claimant within the age range from 18 to 44 years old, who has a tenth grade education and is at least literate and able to communicate in English, who previously worked at an unskilled job and is unable to return to her prior job, and who can perform only sedentary work is deemed to be *not disabled*. 20 C.F.R. Part 404, Subpt. P, App. 2, Rule 201.24 (1992). Because these characteristics describe Reed, the ALJ properly denied her disability benefits.

Accordingly, we affirm the district court.

**2.** The dissent proceeds on the assumption that during oral argument the Secretary "implicitly conceded" that Reed cannot presently engage in substantial gainful activity as a sedentary em-

ployee or, in other words, that Reed cannot perform other sedentary jobs that exist in a significant number in the national economy. We respectfully disagree.

HEANEY, Senior Circuit Judge, dissenting.

Counsel for the Secretary stated at oral argument that the critical issue in this case is whether Marcia Reed's obesity is controllable by her.[3] Counsel thereby implicitly conceded that Reed cannot presently engage in substantial gainful activity as a sedentary employee because of her obesity, a concession which the record requires. The question thus becomes, is there substantial evidence *in this record* that Marcia Reed can reasonably control her obesity? The answer is clearly no. The ALJ, however, made no effort to obtain an answer; he simply assumed that she could. I do not have sufficient information to know whether this assumption reflects a policy of the Secretary,[4] or whether the decision simply reflects the view of one ALJ.[5]

> This circuit's position is clear:
>
> The [social security] agency is certainly not entitled to presumptions that obesity is remediable or that an individual's failure to lose weight is "wilful." The notion that all fat people are self-indulgent souls who eat more than anyone ought appears to be no more than the baseless prejudice of the intolerant svelte....
>
> ... The proper question for the agency is not whether [the claimant's] obesity is in some clinical sense remediable, but whether her obesity is the sole or major cause of her disabilities, and, if so, whether her obesity is reasonably reme-

diable *by her*. The answers to these questions must, of course, be supported by substantial evidence.

*Stone v. Harris,* 657 F.2d 210, 212 (8th Cir.1981).

In addition to the Eighth Circuit, other circuits have addressed this issue, including the Fifth, Sixth, Ninth, and Eleventh Circuits. In *Lovelace,* the male claimant was 5'11" and weighed 252 pounds. In addition to obesity, he suffered from hypertension, arthritis, and back trouble. The court remanded for an individualized determination of his ability to remedy his obesity, faulting the Secretary for failing to make the necessary findings:

> In like disregard of reality, the Secretary continues to hold that a person who is disabled because of obesity has a condition that is per se remediable, without examining the medical condition and personal factors that might make it possible or impossible for a particular disabled person to remedy his obesity.

*Lovelace,* 813 F.2d at 59; *see also Scott v. Heckler,* 770 F.2d 482, 486–487 (5th Cir. 1985).

In *Johnson v. Sec'y of Health & Human Servs.,* 794 F.2d 1106 (6th Cir.1986), the male claimant was 5'9" and weighed 314 pounds. The Sixth Circuit thoroughly reviewed the regulations and decisions relating to obesity:

> The introductory material [in section 10.10 of the Social Security regulations]

---

**3.** Counsel made the following statement at oral argument:

> You know what I think we're seeing here today ... more and more people are going to say, well, I'm obese, therefore you ought to per se find a nonexertional impairment. I don't think this court's ever found that. I think what they have found is that you must ask the next question ... is it controllable? Because if you get to the question of is it controllable, and the answer is yes, it is up to the patient, and the patient chooses not to control it; to me that should be the distinction.

**4.** *See Lovelace v. Bowen,* 813 F.2d 55, 59 (5th Cir.1987) (the Fifth Circuit faulted the Secretary for its policy of finding obesity per se remediable).

**5.** Reed may, in fact, be eligible for SSI benefits by having a listed impairment. To satisfy the

listed impairment entitled "obesity," Reed must meet two requirements. First, she must meet the weight requirement for her height. Because her height is 5'2" and her weight is approximately 293 pounds, she substantially exceeds the listed standard of 242 pounds (as well as the 258–pound standard set forth in the 1992 regulations). *See* 20 C.F.R. Part 404, Subpt. P, App. 1, Table II (1990). Second, she must satisfy one of five other listed requirements, two of which are relevant to this case: (a) history of pain and limitation of motion in any weight-bearing joint or spine (on physical examination) associated with x-ray evidence of arthritis in a weight-bearing joint or spine; or (b) hypertension with diastolic blood pressure persistently in excess of 100 mm. Hg measured with appropriate size cuff. *See* 20 C.F.R. Part 404, Subpt. P, App. 1 § 10.10 (1990).

is instructive. It indicates that obesity-caused disorders are within the contemplation of the Act's coverage and that the Secretary recognizes that obesity by its nature can be expected to result in various restrictions and health problems:

Long-term obesity will usually be associated with disorders in the musculoskeletal, cardiovascular, peripheral vascular, and pulmonary systems and the advent of such disorders is the major cause of impairment. Extreme obesity results in restrictions imposed by body weight and the additional restrictions imposed by disturbances in other body systems.

[20 C.F.R.] Pt. 404, Subpt. P, App. 1, § 10.00(B).... We further note that section 10.10 makes no distinction between obesity that is the result of simple overeating and obesity that is caused by a physiological disorder or other problem.

....

... It would not make sense for the regulatory scheme to include a specific regulation on obesity if a general regulation on treatment could entirely negate it, and we must attempt to construe the regulations so that they make sense.... Few if any claimants could satisfy section 10.10 if the mere possibility of losing weight, however remote or theoretical, could render the claimant ineligible.... Furthermore, this court has stated that physicians' recommendations to lose weight do not necessarily constitute a prescribed course of treatment, nor does a claimant's failure to accomplish the recommended change constitute a refusal to undertake treatment....

... The Secretary must show that the disability is clearly treatable. In the absence of such findings, we are unable to agree with the government's post hoc rationale based on treatability.

*Id.* at 1112–13. The court remanded to the Secretary for consideration in light of its opinion.

In *Hammock v. Bowen*, 879 F.2d 498 (9th Cir.1989), the Ninth Circuit followed *Lovelace* and *Johnson* with respect to a 5'3" female claimant who weighed between 236 and 273 pounds. She submitted evidence of obesity, degenerative spine disease, hypertension, arthritis, hearing loss, ulcers, and a rash. There was no testimony from a vocational expert. The court stated that "while a claimant's impairments can be improved by simply following a doctor's orders to lose weight, losing weight is a task which is not equivalent to taking pills or following a prescription." *Id.* at 503–04. It remanded to the Secretary with directions to take further evidence on the question of whether her obesity was reasonably controllable.

In *McCall v. Bowen*, 846 F.2d 1317 (11th Cir.1988), the claimant was 5'2½" and weighed 173 pounds. She complained of arthritis, back, and heart problems. The Eleventh Circuit remanded for further findings:

Admittedly, plaintiff's physicians advised her to lose weight, and the record clearly indicates her condition would improve if she did so, but no evidence has been presented suggesting that plaintiff has refused to follow a plan of prescribed treatment. A physician's recommendation to lose weight does not necessarily constitute a prescribed course of treatment, nor does a claimant's failure to accomplish the recommended change constitute a refusal to undertake such treatment. McCall's obesity, of itself, does not justify the conclusion that she has refused treatment nor the consequent denial of disability benefits. Further findings of fact and conclusions of law are required before the Secretary may determine that a claimant has refused treatment.

*Id.* at 1319 (citations omitted). These decisions are instructive and well-reasoned, and I therefore find them persuasive in reaching my decision.

The law of this circuit on the issue of obesity, together with that of other circuits, requires us to remand this case to the Secretary for a further hearing. At this hearing, medical testimony must be obtained to establish whether Marcia Reed's obesity is reasonably remediable in

the light of her other disabilities. If it is, the cost of the program,[6] and the length of time it will take to complete it must be determined. If the time is expected to exceed twelve months, then Marcia Reed is entitled to disability benefits for as long as it takes to complete the program. If Reed refuses to participate in prescribed treatment, then she will not be entitled to benefits unless the costs of participation are beyond her personal means and no governmental resources are available to pay for the treatment.

In view of the fact that a remand is required on the obesity issue, there are additional errors by the ALJ that are important to point out so that they will not be repeated. *First*, the ALJ considered an impermissible factor in determining whether Reed was disabled:

> [Reed] has a spotty and irregular work history with erratic earnings. Her work record does not reflect qualities of dedication or the desire to regularly engage in competitive employment. She and her family receive public assistance of $1,140 a month. There are clear indications of secondary gain in this case.

Decision of Administrative Law Judge, Frank C. Mansfield, at 3 (July 2, 1990). Whether Reed, her children, or her husband receive public benefits is irrelevant to the question of whether she is eligible to receive SSI benefits. What is relevant, however, is whether her income and resources exceed the maximum provided by the Social Security regulations. *See* 20 C.F.R. § 416.202 (1990). Counsel for the Secretary conceded this fact at oral argument.[7] If Reed is awarded SSI benefits, then there may be adjustments in other public benefits she and her family might receive and rightly so, but this is a decision to be made by the appropriate authorities if Reed is found eligible for SSI benefits.

*Second*, the ALJ erred in using the guidelines to determine that Reed was not disabled. The Guidelines can only be used where nonexertional impairments are present "if the ALJ finds, and the record supports the finding, that the nonexertional impairments do not *diminish* the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines." *Thompson v. Bowen*, 850 F.2d 346, 349–50 (8th Cir.1988) (emphasis added). The record in this case, establishes that Reed's nonexertional impairments diminish her capacity to engage in the full range of activities of a sedentary employee. This fact was recognized by the ALJ as he found that Reed could not return to her work as a chicken deboner, clearly a sedentary occupation.[8] The question thus becomes whether there are other sedentary jobs that Reed can perform in light of her several nonexertional impairments. A vocational expert is required to answer this question.[9] Perhaps a vocational expert

---

**6.** If a disability benefits claimant cannot afford prescribed treatment or medicine, and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law. *Lovelace*, 813 F.2d at 59; *see also Dover v. Bowen*, 784 F.2d 335, 337 (8th Cir.1986); *Ludden v. Bowen*, 888 F.2d 1246 (8th Cir.1989).

**7.** Counsel acknowledged that the ALJ's error:

> There are a couple of things I think in this case that perhaps are a little unusual and Judge Heaney has hit on one of them at least. That is the choice of the ALJ to go off on the really non-medical issue of the fact that this is a family that exists on welfare. Perhaps we might wish [the ALJ] had chosen not to do that. But, I don't think that that is something that the court should essentially hold against the ALJ....

This error raises the question of whether this matter should be remanded to the ALJ who initially heard the case. I leave it to the Secretary to determine whether the ALJ can overcome his apparent bias.

**8.** The ALJ does not state why Reed cannot work as a chicken deboner but can perform other sedentary work. A poultry boner is defined as one who

> [c]uts, scrapes and pulls meat from cooked poultry carcasses, using fingers and boning knife: Pulls wings and drumsticks from carcasses. Cuts along each side of breast plate, using knife, and peels meat from breast, using hands. Pulls and scrapes meat from rest of carcass, using knife and hands. Segregates light and dark meat into separate piles. Discards wastes, such as skin, bones, and gristle, into waste containers.

Dictionary of Occupational Titles 347 (4th ed. 1977).

**9.** *See Dover*, 784 F.2d at 337–38 ("on remand, assuming the evidence as developed does not

would find that even though her abilities were diminished, she can still engage in substantial gainful employment as a sedentary worker, perhaps not.

*Third,* the ALJ erred in discounting Reed's complaint of headaches:

> There is no documentation in the record that [Reed] complained to physicians of headaches five out of seven days a week lasting for almost a whole day, and no physician noted any significant impairment in her ability to concentrate. Surely, if her headaches were that bad, she would have sought medical intervention.

Decision of ALJ at 3. The facts are that Reed has been taking prescribed medicines for headaches on a regular basis from 1988 through 1990. These prescribed medicines include Tylenol with codeine and Fiorinal. Moreover, numerous medical reports document the fact that Reed has a long history of migraine headaches.[10]

*Fourth,* the ALJ stated that one reason for rejecting the claimant's testimony was her conduct and demeanor at the hearing. Decision of ALJ at 4. He gave no explanation in his report as to what there was about her conduct and demeanor that reflected on her credibility. This being the case, I have no way of knowing whether he was applying the "sit-and-squirm" test that we have rejected in *Reinhart v. Sec'y of Health & Human Servs.,* 733 F.2d 571, 573 (8th Cir.1984), and *Cline v. Sullivan,* 939 F.2d 560, 567–68 (8th Cir.1991), or some other factor that this court has considered inappropriate. *See Bishop v. Sullivan,* 900 F.2d 1259, 1263 (8th Cir.1990).

*Fifth,* the ALJ stated that "[Reed] engages in the performance of household tasks, cooks, helps her children get ready for school, watches television, does some sewing, used to do some painting as a hobby, and occasionally takes walks." Decision of ALJ at 4. He decided that these activities indicate Reed is capable of performing sedentary work. This court has

consistently held that the ability to do the listed activities is not evidence of one's "ability to perform as required on a daily basis in the 'sometimes competitive and stressful' environment of the working world." *Easter v. Bowen,* 867 F.2d 1128, 1130 (8th Cir.1989) (citation omitted). Something more than this is required. *See also Ghant v. Bowen,* 930 F.2d 633, 638–39 (8th Cir.1991).

## CONCLUSION

The case law of this circuit requires that this matter be remanded to the Secretary to determine whether Reed's obesity can be remedied by reasonable actions on her part. The case law also requires that on remand the ALJ determine whether Reed's ability to engage in substantial gainful activity is *diminished* by her nonexertional impairments. If so, he must call a vocational expert to determine if, in light of these nonexertional limitations, there is work in the national economy that she can perform. Because the majority rejects established case law, I respectfully dissent.

conclusively establish that appellant is disabled, we believe that vocational expert testimony is needed to satisfy the Secretary's burden [when the ALJ concludes that a claimant cannot return to previous work] of demonstrating the avail-

ability of jobs in the national economy that appellant could perform").

**10.** *See* Adm.Rec. at 121, 195, 246, 257, 261, 265, 274, 279, 281, 284, 311, 317, 322.